**JOHN J. ZIDZIUNAS & ASSOCIATES, LLC**
**JOHN J. ZIDZIUNAS, ESQ.: BAR I.D. 03652-2005**
**33 Plymouth Street, Suite 202A**
**Montclair, New Jersey 07042**
**973-509-8500**
**Attorneys for Plaintiff Russell Williams, on behalf of, the Estate of Jason E. Williams**

| | |
|---|---|
| **RUSSELL WILLIAMS, on behalf of, THE ESTATE OF JASON E. WILLIAMS,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**CITY OF TRENTON; JOHN DOE POLICE OFFICERS 1-10 (in their individual and professional capacities as Police Officers for the City of Trenton Police Department),**<br><br>**Defendants.** | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>**Civil Action No.:**<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Russell Williams, on behalf of, the Estate of Jason E. Williams ("Williams" or "Plaintiff"), who resides at 2350 Princeton Pike, Lawrenceville, NJ 08648, by way of this Complaint against the Defendants, the City of Trenton/City of Trenton Police Department ("City" or "Defendant"), John Doe Officers 1-10, and XYZ Corps. 1-10, (hereinafter, collectively, the "Defendants") hereby says:

## Nature of Action, Jurisdiction, and Venue

1.      This is an action seeking equitable and legal relief for: (1) a violation of 42 U.S.C. § 1983 - excessive use of force; (2) a violation of 42 U.S.C. § 1983 – Monell; (3) a violation of 42 U.S.C. § 1983 - individual liability; (4) a violation of the New Jersey

Wrongful Death Statute, N.J.S.A. 2A:31-4 et seq.; (5) a violation of the New Jersey Survival Act, N.J.S.A. 2A:15-3 et seq.; and a common law claim for Assault/Battery.

2.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(1), (3), (4) and the aforementioned statutory and constitutional provisions.

3.      Further, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as such claims form part of the same case or controversy as Plaintiff's federal law claims.

4.      The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff resides in New Jersey, Defendants have an office and do business in New Jersey; and the causes of action accrued in New Jersey.

## PARTIES

6.      Plaintiff Russell Williams is an adult individual citizen of the State of New Jersey and the father of Decedent Jason Williams.

7.      Plaintiff Russell Williams is also the Administrator of the Estate of Jason Williams ("Decedent").

8.      Defendant, City of Trenton is a municipal corporation and a public employer of the individual Defendants.

9.      The City of Trenton Police Department is and was, at all times relevant to this matter, a division and/or department of the City of Trenton entrusted with, among other

things, enforcing federal, state and local laws and ordinances, and otherwise ensuring the safety of people and property within the jurisdictional limits of the City of Trenton.

10.     Defendants, John Doe Officers 1-10, are presently unknown police officers, employees, agents and/or representatives of City of Trenton and/or City of Trenton Police Department whose unlawful actions are described, referenced and/or set forth herein.  All are being sued individually and in their official capacities.

## FACTUAL BACKGROUND

11.     On March 14, 2019, the Decedent, Jason Williams, was in his residence, located at 619 North Olden Ave, Trenton, NJ.

12.     At the time, the Decedent resided with his then girlfriend, Carolyn Sweeney ("Sweeney"), and her two children.

13.     The Decedent had long suffered from mental health issues and had only two (2) months prior been released from a mental health facility.

14.     Upon information and belief, earlier in the day on March 14, 2019, Sweeney and the Decedent had a domestic dispute which resulted in Sweeney's arrest.

15.     Thankfully, Sweeney's two (2) children were picked up from the residence by relatives at approximately 6:00pm.

16.     Two (2) 9-1-1 calls were then made to the City of Trenton Police Department, advising that the Decedent was suicidal.

17.     Sweeney's sister made the first 9-1-1 call.

18.     The Decedent's father, Plaintiff Russell Williams, made the second phone call to 9-1-1.

19.    When Plaintiff Russell Williams finally got through to the Trenton Police Department dispatcher, he was advised that police officers and an ambulance were already at the Decedent's residence.

20.    At approximately 10:46pm Defendants John Doe Officers 1-10, officers of the City of Trenton Police Department, arrived at Jason Williams' residence.

21.    Due to the 9-1-1 calls made, John Doe Officers 1-10 had knowledge of the Decedent's mental health status and that he was suffering from suicidal ideations.

22.    Specifically, John Doe Officers 1-10 should have known that this was a sensitive situation and to approach the Decedent with care and respect for his mental health status.

23.    Despite this, John Doe Officers 1-10 ignored the Decedent's mental health status and made no attempt to get the Decedent mental health support.

24.    According to John Doe Officers 1-10's body camera video footage, John Doe Officers 1-10 walked unto the Decedent's front porch.

25.    At all relevant times the front door of the residence, which consisted of both a storm door and a screen door, was closed.

26.    Although the Decedent cannot be heard saying anything on the body camera video footage, John Doe Officers 1-10 began stating to each other that the Decedent had a gun and that he would "shoot" if they entered the residence.

27.    This is only further proof that John Doe Officers 1-10 had knowledge of the Decedent's mental health status and that he was suffering from suicidal ideations and would "shoot" himself if they entered his residence.

28.     Further, at the time John Doe Officers 1-10 made these statements, the Decedent and John Doe Officers 1-10 were still separated by the closed front doors, ensuring that the Decedent was not able to brandish a weapon at John Doe Officers 1-10.

29.     John Doe Officers 1-10 then continued to ignore the proper protocol when faced with suicidal individuals by recklessly breaching the Decedent's front door and shooting at Jason Williams.

30.     John Doe Officers 1-10 did so despite knowing that Jason Williams was suicidal and was in need of mental health support.

31.     Additionally, John Doe Officers 1-10 did so without first asking the Decedent whether others were inside the residence.

32.     The shooting of Jason Williams was done with malice, wanton disregard for Jason Williams' rights and with an intent or foreseeability of harmful consequences.

33.     Specifically, John Doe Officers 1-10 did this without trying to deescalate the situation, without getting the Decedent mental health support, without ensuring there was anyone else in the home, including the two children that resided there, and without taking into account that neighbors could have been harmed due to the nature of the residence (connected row houses).

34.     It was later confirmed that the Decedent only had a BB Gun. (See. Ex. A, B)

35.     In total John Doe Officers 1-10 intentionally and/or recklessly fired seventeen (17) times at Jason Williams, while he was in his own home.

36.     Then rather than giving the Decedent proper medical care, John Doe Officers 1-10 intentionally and/or recklessly turned him on his stomach and cuffed him behind his back, causing the Decedent further suffering and harm.

37.     Incredulously, John Doe Officers 1-10 somehow felt it was necessary to cuff the Decedent despite the fact that his body was riddled with bullet holes, was bleeding profusely, and was rendered incapacitated.

38.     Indeed, **nine (9) of the seventeen (17) shots** entered the Decedent's body.

39.     Further, the autopsy report lists the cause of Jason Williams' death as Gunshot wounds of torso, right arm and left hand and **the manner of death as homicide**. (id.)

40.     Lastly, bullet holes were found throughout the Decedent's residence, evidencing that the 17 shots negligently and/or recklessly fired by John Doe Officers 1-10 ricocheted throughout the residence, endangering the lives of members of the public nearby.

41.      As a direct and proximate result of Defendants John Doe Officers 1-10's acts and/or omissions, the Decedent was intentionally and/or recklessly killed, and his estate and heirs suffered monetary loss and damage.

42.     Notices of Tort Claim in the form prescribed by N.J.S.A. 59:8-4 were timely served upon all requiring such notice. (See. Ex C) More than six (6) months have passed since the service of said Notice and Plaintiff's claim remains unsatisfied.

### FIRST COUNT
**42 U.S.C. § 1983 - Excessive Use of Force**
**(All Defendants)**

43.     The allegations set forth in the preceding paragraphs are incorporated herein by specific reference as if fully set forth.

44.     Defendants intentionally and/or recklessly used unreasonable and/or excessive force on the Decedent, thereby killing him and depriving him of his right to be free from the use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. §1983.

45.     More specifically, Defendants intentionally shot Jason Williams and Defendants' actions were the actual and proximate cause of Jason William's death.

46.     The firing of seventeen (17) shots by the Defendant Officers at Jason Williams was a blatant excessive use of force by the Defendants.

47.     Defendants' firing of seventeen (17) shots at Jason Williams was a violation of police policy and constituted extreme and outrageous conduct.

48.      The conduct of the Defendants occurred while they were acting under color of law and in their official capacities.

49.     All of the actions and/or omissions described above were undertaken in a willful and malicious manner with an immoral purpose to injure and/or cause harm to the Decedent.

50.     As a direct and proximate result of Defendants' acts and/or omissions, the Decedent was unlawfully killed, and his estate and heirs suffered monetary loss and damage.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

(a) for compensatory damages;

(b) for punitive damages;

(c) for interest, costs and attorney's fees; and

(d) for such further relief as the court deems proper.

## SECOND COUNT
### 42 U.S.C. § 1983 - Excessive Use of Force
### (As to the Defendant City under Monell)

51.    The allegations set forth in the preceding paragraphs are incorporated herein by specific reference as if fully set forth.

52.     At all relevant times, Defendant City of Trenton was the employer of John Doe Officers 1-10 and John Doe Officers 1-10 were acting as their agents, servants, and employees.

53.    Defendant City of Trenton, failed to use reasonable care in the selection of its employees, and/or servants, failed to properly train and/or supervise the individual defendants, for example, the City of Trenton failed to properly train its officers in the use of force so as to prevent John Doe Officers 1-10 from assaulting plaintiffs and acting with excessive force against the Decedent.

54.    The City of Trenton failed to discipline or otherwise meaningfully address the City of Trenton Police Department's officers' use of excessive force.

55.    The City of Trenton thus created a tacit policy, practice, and custom of permitting actions like those of John Doe Officers 1-10 to continue with impunity.

56.    The City of Trenton acted under color of law pursuant to an official policy or custom and practice whereby the use of excessive force was permitted, tolerated, encouraged, and condoned.

57.    The City of Trenton intentionally, knowingly, recklessly, with willful and wanton indifference failed to properly and adequately control and discipline on a continuing basis its employees, agents, and/or servants.

58.    The City of Trenton otherwise failed to prevent John Doe Officers 1-10 from unlawfully and maliciously conducting, permitting, or allowing the use of excessive force upon the Decedent in violation of the rights, privileges, and immunities guaranteed to him by the Constitution and laws of the United States and/or New Jersey.

59.    The public record contains numerous examples of the City of Trenton Police Department using excessive force and many officers have either plead guilty or have been charged with crimes connected to those excessive uses of force.

60.    The City of Trenton has had an inadequate response to the complaints of victims, thereby condoning the violent acts of its police officers.

61.    It is clear that the City of Trenton willfully fails to supervise their officers such that officers feel that they can violate the law and the rights of civilians without consequence.

62.    This caused a culture where, as here, officers, such as John Doe Officers 1-10, act without fear of reprimand.

63.     The City of Trenton had knowledge of their officers' pattern of misconduct, yet it failed to diligently and reasonably exercised its duties to instruct, supervise, control, and discipline its employees, agents and/or servants.

64.    Thusly, the City of Trenton acts and omissions constituted a pattern of deliberate indifference to the rights of the Decedent and others.

65.    The City of Trenton failure or refusal to prevent the commissions and/or omissions stated herein constitutes an intentional, knowing, and deliberate indifference to the rights of the Decedent.

66.     The City of Trenton, therefore, directly or indirectly, and under color of law, thereby approved or ratified the unlawful, malicious, and wanton conduct of John Doe Officers 1-10.

67.     As a direct and proximate result of Defendants' acts and/or omissions, the Decedent was unlawfully killed, and his estate and heirs suffered monetary loss and damage.

WHEREFORE, Plaintiff requests this court to enter judgment against the Defendants, jointly and severally, as follows:

(a) for compensatory damages;

(b) for punitive damages;

(c) for interest, costs and attorney's fees; and

(d)  Injunctive relief, including but not limited to:

i. An order from this Court enjoining the City of Trenton Police Department from continuing its pattern and practice of violating citizen's civil rights;

ii. Placement of the City of Trenton Police Department in receivership for the purpose of instituting programs to train, instruct, discipline, control and supervise the officers of the City of Trenton Police Department.

iii. Institution of a Citizens' Review Board to review complaints of and violations of citizens' constitutional rights against officers of the City of Trenton Police Department;

iv. Appointment of an independent disciplinary board to review citizens' complaints and charges against officers of the City of Trenton Police Department; and

(e) All such other relief as this court may deem appropriate, equitable and just.

## THIRD COUNT
**42 U.S.C. § 1983 - Excessive Use of Force**
**(As to John Doe Officers 1-10 - Individual Liability)**

68.     The allegations set forth in the preceding paragraphs are incorporated herein by specific reference as if fully set forth.

69.     John Doe Officers 1-10 intentionally and/or recklessly used unreasonable and/or excessive force on Jason Williams, thereby killing him and depriving him of his right to be free from the use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. §1983.

70.     More specifically, John Doe Officers 1-10 intentionally and/or recklessly shot Jason Williams and John Doe Officers 1-10's actions were the actual and proximate cause of Jason Williams' death.

71.     The firing of the seventeen (17) shots by John Doe Officers 1-10 at Jason Williams was a blatant excessive use of force.

72.     John Doe Officers 1-10's firing of seventeen (17) shots at Jason Williams was a violation of police policy and constituted extreme and outrageous conduct.

73.      The conduct of John Doe Officers 1-10 occurred while they were acting under color of law and in their official capacities.

74.     All of the actions and/or omissions described above were undertaken in a willful and malicious manner with an immoral purpose to injure and/or cause harm to Jason Williams.

75.     As a direct and proximate result of John Doe Officers 1-10's acts and/or omissions, the Decedent was unlawfully killed, and his estate and heirs suffered monetary loss and damage.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

(a) for compensatory damages;

(b) for punitive damages;

(c) for interest, costs and attorney's fees; and

(d) for such further relief as the court deems proper.

### FOURTH COUNT
### N.J.S.A. 2A:31-4 et seq. - Wrongful Death
### (All Defendants)

76.     The allegations set forth in the preceding paragraphs are incorporated herein by specific reference as if fully set forth.

77.     Plaintiff Russell Williams is Administrator of the Estate of Jason Williams and brings this action under and pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-4 et seq.

78.     Plaintiff further demands damages for all pecuniary losses, including the medical expenses, funeral expenses and expenses of administration necessitated by reason of the death of Jason Williams, and other expenses reasonably associated with Jason Williams' death.

79.     As a result of the wrongful death of Jason Williams, his survivors have been deprived of the earnings, maintenance, guidance, support, companionship and comfort that they would have received from him for the remainder of his natural life.

WHEREFORE, Plaintiff Russell Williams, individually and as Administrator of the Estate of Jason Williams demands judgment against the Defendants as follows:

(a) for compensatory damages;

(b) for punitive damages;

(c) for interest, costs and attorney's fees; and

(d) for such further relief as the court deems proper.

**FIFTH COUNT**
**N.J.S.A. 2A:15-3 et seq.- Survival Claim**
**(All Defendants)**

80.     The allegations set forth in the preceding paragraphs are incorporated herein by specific reference as if fully set forth.

81.     Plaintiff Russell Williams is Administrator of the Estate of Jason Williams and brings this action pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3, et seq.

82.     Plaintiff demands damages from Defendants for the physical and emotional pain and suffering experienced and medical expenses sustained by Jason Williams prior to his death.

83.     The acts and omissions of the Defendants were the direct and proximate cause of the death of Jason Williams.

84.     Accordingly, Defendants were the direct and proximate cause  and physical and emotional pain and suffering experienced and medical expenses sustained by Jason Williams prior to his death.

WHEREFORE, Plaintiff Russell Williams, as Administrator of the Estate of Jason Williams demands judgment against the Defendants as follows:

(a) for compensatory damages;

(b) for punitive damages;

(c) for interest, costs and attorney's fees; and

(d) for such further relief as the court deems proper.

## SIXTH COUNT
## Common Law Claim - Assault & Battery
## (All Defendants)

85.    The allegations set forth in the preceding paragraphs are incorporated herein by specific reference as if fully set forth.

86.    Defendants intentionally touched Jason Williams without permission and/or legitimate justification or cause.

87.    Jason Williams was killed as a result of said improper touching.

88.    Said touching was done with malice, wanton disregard for Jason Williams' rights and sensitivities and with an intent or foreseeability of harmful consequences.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

(a) for compensatory damages;

(b) for punitive damages;

(c) for interest, costs and attorney's fees; and

(d) for such further relief as the court deems proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

John J. Zidziunas, Esq. is hereby designated as trial counsel on behalf of Plaintiff.

## L.Civ.R. 11.2 CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, now or contemplated, and that no other parties should be joined in this action.

**JOHN J. ZIDZIUNAS & ASSOCIATES, LLC**
Attorneys for Plaintiff


BY:     /S/ *John J. Zidziunas*
              JOHN J. ZIDZIUNAS, ESQ.


DATED: March 13, 2021

EARLY SUNDAY EDITION

# The Trentonian

**Early Sunday, March 17, 2019**   $1.75   FACEBOOK.COM/TRENTONIAN

MediaNews Group   trentonian.com

# SHOT DEAD BY POLICE



Jason Williams

*Trenton man killed after officer-involved shooting overnight after he apparently brandished a gun at cops that turned out to be a bb gun »*
**PAGE 3**

# SHOT DEAD BY POLICE

Trenton man killed after officer-involved shooting overnight after he apparently brandished a gun at cops that turned out to be a bb gun >>

The Trentonian (Trenton, NJ)   16 Mar 2019   By Isaac Avilucea iavilucea@21st-centurymedia.com @IsaacAvilucea on Twitter

TRENTON >> State authorities are investigating a fatal police-involved shooting that happened Thursday night in the capital city.



The shooting happened fewer than two hours after police responded to a domestic violence call on the same 600 block of North Olden Avenue, records show.

The state Attorney General's Office identified the man killed as 42-year-old Jason Williams, of Trenton.

Four Trenton Police officers responded to the 600 block of North Olden Avenue after receiving two 911 calls of a suicidal man, the AG's office said in a statement Friday.

The cops encountered Williams around 10:46 p.m. in the doorway of a home, wielding a handgun and threatening to harm himself, according to the AG's office.

Two of the officers fired their weapons during the encounter, fatally wounding Williams, who was taken to Capital Health Regional Medical Center where he was pronounced dead.

The names of the officers involved have not been released. No one else was injured, but the officers were taken to the hospital as a precaution.

Police recovered a weapon, which turned out to be a BB gun, authorities said.

The shooting happened about 90 minutes after Trenton Police responded to a domestic violence call on the 600 block, according to a source and confirmed by police records.

Police records showed that Trenton Police officer Yusuf Addar locked up 48-year-old Carolyn Sweeney on that call, on a simple assault charge, around 9 p.m.

A Trenton Police spokesman said cops were called out to the neighborhood for family trouble.

When they arrived, the 42-yearold boyfriend informed cops he and his girlfriend Sweeney argued and she punched him in the face, the police spokesman said.

Sweeney admitted hitting her boyfriend, the police spokesman said, and she was hooked, booked and taken to headquarters.

The police spokesman wouldn't confirm whether the 42-year-old domestic violence victim was Williams, who was identified by the AG's office as the man fatally shot by police later in the night.

However, the source, who spoke on condition of anonymity due to the ongoing investigation, said it was while police were processing Sweeney at headquarters that they received the emergency calls about Williams threatening to harm himself.

Officers responded back out to the same block and knocked on Williams' door, the source said.

One of the officers pushed in the door and hollered inside to try to get Williams' attention, the source said.

That's when he suddenly emerged with a gun in his hands and allegedly pointed it toward the officers, the source said.

Two of the officers opened fire while a third ducked for cover on the porch, the source said.

Williams' cousin, who didn't want her name used, told The Trentonian in a Facebook messenger conversation that he was dating someone but she wouldn't confirm the woman's name.

She said she was at a loss over Williams' death.

"All I know is there was a fight. His girl got arrested. Then he got upset," the cousin said. "I just know I lost a big brother. He was a good guy who was just struggling with depression. He has had the worst life and always smiled no matter what. I'm just confused of why lethal force on a call where they were warned it was a man who did not want to live was used so quickly. Shoot to kill is all these cops know, I guess."

The Attorney General's Shooting Response Task Force continues to investigate.

# HINSON SNIPES, LLP

ATTORNEYS AT LAW
PRINCETON FORRESTAL VILLAGE
116 VILLAGE BLVD. SUITE 307
PRINCETON, NEW JERSEY 08540

TRACEY HINSON**+
MAURICE SNIPES

609 452 7333
FAX: 609 452 7332

www.hinsonsnipesllp.com

**NJ & NY Bars
+Certified Civil Trial Attorney

### REVISED COVER LETTER
April 8, 2019

### VIA NEW JERSEY LAWYER SERVICE
State of New Jersey, Department of Treasury
20 W. State Street
Trenton, New Jersey 08625
Attn.: Tort Claims Unit

Re:  **Russell Williams o/b/o the Estate of Jason E. Williams**
D/A: March 14, 2019

Dear Sir or Madam:

Enclosed please find Claimant, **Russell Williams o/b/o the Estate of Jason E. Williams** completed Claim for Damages against the Trenton Police Department. Additional documentation will be forwarded as it is received.

Please be guided accordingly.

Very truly yours,

**HINSON SNIPES, LLP**

By: Tracey C. Hinson, Esquire

/aj
encls.

# INITIAL NOTICE OF CLAIM FOR DAMAGES AGAINST THE STATE OF NEW JERSEY

**FOWARD TO:** TORT AND CONTRACT UNIT
DEPARTMENT OF THE TREASURY, BUREAU OF RISK MGMT.
PO BOX 620
TRENTON, NEW JERSEY 08625
PHONE: (609) 292-4347

### FORM <u>MUST</u> BE FILED WITHIN <u>90</u> DAYS OF THE ACCIDENT OR YOU MAY FORFEIT YOUR RIGHT

1. **CLAIMANT:**

Russell Williams dbb The estate &amp; Jason E Williams    Tw 5/7/1976   RW- 3/8/1951

LAST NAME    FIRST    MIDDLE          DATE OF BIRTH

2350 Princeton Pike, Apt 3

STREET ADDRESS                 MAILING ADDRESS IF OTHER THAN STREET ADDRESS

Lawrenceville    NJ    08648      RW- ███████ / JW- ███████

CITY     STATE     ZIP CODE         SOCIAL SECURITY NUMBER

2. **IF NOTICES AND CORRESPONDENCE IN CONNECTION WITH THIS CLAIM ARE TO BE SENT TO A PERSON OTHER THAN CLAIMANT, COMPLETE ITEM #2.**

Hinson Snipes - Princeton Forestal Village - 116 Village Blvd

NAME                      MAILING ADDRESS

PRINCETON     NJ     08540      Suite 307

CITY     STATE     ZIP CODE

**RELATIONSHIP TO CLAIMANT:** ATTORNEY AT LAW ☒ OR _____

EXPLAIN RELATIONSHIP

**THE OCCURRENCE OR ACCIDENT WHICH GAVE RISE TO THIS CLAIM:**

3a.    3/14/2019     10:45 PM

DATE        TIME

b. **DESCRIBE THE LOCATION OR PLACE OF THE ACCIDENT OR OCCURENCE.**

Trenton                 619 North Olden Avenue

MUNICIPALITY              EXACT LOCATION OF THE OCCURRENCE

c. DESCRIBE HOW THE ACCIDENT OR OCCURENCE HAPPENED: IF A DIAGRAM WILL ASSIST YOUR EXPLANATION, PLEASE USE THE REVERSE SIDE OF THIS FORM.

Jason was at his residence of 619 N. Olden Avenue Trenton, NJ. He was shot by members of the Trenton Police Department. And died as a result of those injuries.

d. STATE THE NAME AND ADDRESS OF THE STATE AGENCY OR AGENCIES THAT YOU CLAIM CAUSED YOUR DAMAGE.

Trenton Police Department, 225 N. Clinton Ave, Trenton, NJ 08609
City of Trenton, 319 E. State Street, Trenton, NJ 08608
Mercer County, Clerks ofc. 209 South Broad Street, Trenton, NJ
State of N. Jersey. Dept of Treasury. 20 W. State Street, Trenton, NJ 08608 08652

STATE THE NAMES OF STATE EMPLOYEES WHOM YOU CLAIM WERE AT FAULT, INCLUDING ANY INFORMATION THAT WILL ASSIST IN INDENTIFYING AND LOCATING THEM.

City of Trenton          — Trenton Police Department
Mercer County
State of New Jersey

e. STATE THE NEGLIGENCE OR WRONGFUL ACTS OF THE STATE AGENCY AND STATE EMPLOYEES WHICH CAUSED YOUR DAMAGES.

Gunshot wounds to torso, right arm + left hand

f. STATE THE NAME AND ADDRESS OF ALL WITNESSES TO THE ACCIDENT OR OCCURRENCE.

Trenton Police Dept. 225 N. Clinton. Ave. Trenton, NJ 08609
City of Trenton, 319E State Street, Trenton, NJ 08608
Mercer County, Clerks ofc 209 South Broad St. Trenton, NJ 08608
State of N. Jersey - Dept of Treasury, 20 W. State Street, Trenton NJ 08652

g. STATE THE NAMES OF ALL POLICE OFFICERS AND POLICE DEPARTMENTS WHO INVESTIGATED THIS ACCIDENT.

Trenton Police Department, 225 N. Clinton, Avenue, Trenton, NJ 08609

additional information + names to be supplied

4a. CLAIM FOR DAMAGES (CHECK APPROPRIATE BLOCK):

☒ PERSONAL INJURY   ☐ PROPERTY DAMAGE

☐ OTHER - EXPLAIN IN DETAIL

**b.  IF YOU CLAIM PERSONAL INJURY:**

**(1)  DESCRIBE YOUR INJURIES RESULTING FROM THIS ACCIDENT OR OCCURRENCE.**

Death/Died.

Gunshot wounds of torso, right arm and left hand.

**(2)  DO YOU CLAIM PERMANENT DISABILITY RESULTING FROM THIS INJURY:**

☐ YES  ☐ NO    unknown

**IF YES, DESCRIBE THE INJURIES BELIEVED TO BE PERMANENT.**

**(3)  FOR EACH HOSPITAL, DOCTOR OR OTHER PRACTITIONER RENDERING TREATMENT, EXAMINATION OR DIAGNOSTIC SERVICES, STATE:**

| NAME OF HOSPITAL, DOCTOR OR OTHER FACILITY | ADDRESS | DATES OF TREATMENT OR SERVICE | AMOUNT OF CHARGE TO DATE | AMT. PAID OR PAYABLE BY OTHER SOURCE SUCH AS INSURANCE |
|---|---|---|---|---|
| Capital Health | Trenton City, NJ | 3/14/2019 | TBS | TBS |
| | | | | |
| | | | | |
| | | | | |

**(4)  IF YOU CLAIM LOSS OF WAGE OR INCOME AS A RESULT OF THE INJURY STATE:**

N/A

**NAME OF EMPLOYER**                    **ADDRESS OF EMPLOYER**

**YOUR OCCUPATION**                    **DATE YOU BECAME EMPLOYED**

**RATE OF PAY**                    **DATE OF ABSENCE FROM WORK**

**TOTAL LOSS WAGES TO DATE**        **IF STILL OUT, EXPECTED DATE OF RETURN**

**NOTE: IF YOUR CLAIMED LOSS OF INCOME ARISES FROM SELF-EMPLOYMENT OR OTHER THAN WAGE, ATTACH A CALCULATION SHOWING THE BASIS OF YOUR CALCULATION OF LOST INCOME.**

* (5)  SET FORTH ANY AND ALL OTHER LOSSES OR DAMAGE CLAIMED BY YOU.

C.  IF YOU CLAIM PROPERTY DAMAGE:

(1)  DESCRIBE THE PROPERTY DAMAGED. _TBS if any._

(2)  THE PRESENT LOCATION AND TIME WHEN THE PROPERTY MAY BE INSPECTED.

(3)  DATE PROPERTY ACQUIRED.

(4)  COST OF PROPERTY  $

(5)  VALUE OF PROPERTY AT TIME OF ACCIDENT:  $

(6)  DESCRIPTION OF DAMAGE.

(7)  HAS THE DAMAGE BEEN REPAIRED?                    IF SO, BY WHOM, WHEN AND COST OF REPAIRS.

(8)  ATTACH EACH ESTIMATE OF REPAIR COSTS TO THIS FORM.

(9)  SET FORTH IN DETAIL THE LOSS CLAIMED BY YOU FOR PROPERTY DAMAGE.

d.  SET FORTH IN DETAIL ALL OTHER ITEMS OF LOSS OR DAMAGES CLAIMED BY YOU AND THE METHOD BY WHICH YOU MADE THE CALCULATION. _TBS, if any._

5. THE AMOUNT OF THE CLAIM.   $1 million

6. HAVE YOU MADE A CLAIM AGAINST ANYONE ELSE FOR ANY OF THE LOSSES OR EXPENSES CLAIMED IN THIS NOTICE?

Yes.

IF YES, SET FORTH THE NAME AND ADDRESS OF ALL PERSONS AND INSURANCE COMPANIES AGAINST WHOM YOU HAVE MADE SUCH CLAIMS:

Trenton Police Department, 225 North Clinton Ave, Trenton, NJ
Mercer County Clerks ofc, 209 South Broad Street, Trenton, NJ 08609
State of NJ Dept of Treasury, 20 West State, Trenton, NJ 08625
City of Trenton, 319 E State Street, Trenton, NJ 08608

7. ARE ANY OF THE LOSSES OR EXPENSES CLAIMED HEREIN COVERED BY ANY POLICY OF INSURANCE?

unknown

FOR EACH SUCH POLICY, STATE THE NAME AND ADDRESS OF THE INSURANCE COMPANY, POLICY NUMBER AND BENEFITS PAID OR PAYABLE

unknown at this time, TBS, if any.

8. HAVE YOU RECEIVED OR AGREED TO RECEIVE ANY MONEY FROM ANYONE FOR THE DAMAGES CLAIMED HEREIN?

☐ YES   ☒ NO

IF YES, SET FORTH THE DETAIL OF SUCH AGREEMENT.

9. THE FOLLOWING ITEMS MUST BE SUBMITTED WITH THIS NOTICE:

(1) COPIES OF ITEMIZED BILLS FOR EACH MEDICAL EXPENSE AND OTHER LOSSES AND EXPENSES CLAIMED. TBS

(2) FULL COPIES OF ALL APPRAISALS AND ESTIMATES OF PROPERTY DAMAGE CLAIMED BY YOU. N/A

(3) COPIES OF ALL WRITTEN REPORTS OF ALL EXPERT WITNESSES AND TREATING PHYSICIANS.  TBS

(4) A LETTER FROM YOUR EMPLOYER VERIFYING YOUR LOST WAGES. IF SELF-EMPLOYED, A STATEMENT SHOWING THE CALCULATION OF YOUR CLAIMED LOST INCOME.  N/A

I HEREBY CERTIFY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE. THAT THE ATTACHED STATEMENTS, BILLS, REPORTS AND DOCUMENTS ARE THE ONLY ONES KNOWN TO ME TO BE IN EXISTENCE AT THIS TIME.  I AM AWARE THAT IF ANY STATEMENT MADE HEREIN IS WILLFULLY FALSE OR FRAUDULENT THAT I AM SUBJECT TO PUNISHMENT PROVIDED BY LAW.

4/8/209
DATE

C. Hines
CLAIMANT OR PERSON FILING ON BEHALF OF CLAIMANT