UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUSSELL WILLIAMS, on behalf of THE ESTATE OF JASON E. WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF TRENTON, *et al.*,<br><br>Defendants. | Civil Action No. 21-5050 (ZNQ) (RLS)<br><br>**MEMORANDUM OPINION AND ORDER** |

**SINGH, United States Magistrate Judge**.

  **PRESENTLY** before the Court is a Motion by Plaintiff Russell Williams, on behalf of the Estate of Jason E. Williams, ("Plaintiff") to Amend his Complaint (the "Motion"). (Doc. No. 77). Defendants City of Trenton, Officer Yusuf Addar, Officer Nicholas Hogan, Officer Daniel Piotrowski, and Officer Bryan Kirk (collectively, "Defendants") oppose the Motion, (Doc. No. 79), to which Plaintiff replied, (Doc. No. 82). At the direction of the Court, the parties submitted supplemental briefing. (Doc. Nos. 83-85). The Court has fully considered the parties' written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below and for good cause shown, the Court **DENIES** Plaintiff's Motion.

1

I.     **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

As the parties are familiar with the background and procedural history of this case, the Court recites only those facts relevant to the present Motion. Plaintiff brought this action on behalf of the estate of his son, Jason E. Williams ("Decedent"), which arises from a police interaction that resulted in Decedent's death.[1] More specifically, on March 14, 2019, Decedent resided with his partner, Carolyn Sweeney, and two of her children, "S" and "L." (Doc. No. 11 at ¶ 17). On that day, Decedent and Sweeney had a dispute that resulted in the police being dispatched to the residence and arresting Sweeney. (Doc. No. 11 at ¶ 19).

Following her arrest, Sweeney's sister and Plaintiff called the City of Trenton Police Department advising that Decedent was suicidal. (Doc. No. 11 at ¶¶ 23-24). In response, officers arrived at Decedent's residence at approximately 10:46 p.m. (Doc. No. 11 at ¶ 27). According to Plaintiff, the officers made no attempt to provide Decedent with mental health care. (Doc. No. 11 at ¶ 30). Plaintiff claims that officers can be heard through body camera footage stating that Decedent was holding a gun and would shoot if the officers attempted to enter the residence. (Doc. No. 11 at ¶ 33). Unbeknownst to the officers at the time, the weapon held by Decedent was an airsoft gun (or "BB gun"). (Doc. No. 11 at ¶ 43). Officers ultimately breached the front door and discharged their weapons seventeen times, hitting Decedent nine times. (Doc. No. 11 at ¶¶ 39, 44-45). The officers then handcuffed Decedent instead of providing medical assistance. (Doc. No. 11 at ¶ 47). Decedent's injuries ultimately proved fatal. (Doc. No. 11 at ¶ 49).

In his complaint, Plaintiff asserts: a claim through 42 U.S.C. § 1983 for excessive use of force; a claim through 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978),

---

[1] Defendants argue that Russell Williams is not authorized to bring this action because he is not the proper administrator of Decedent's estate. (Doc. No. 79 at pp. 28-33). Because that argument does not impact the Court's resolution of this Motion, the Court does not address it here.

against the City of Trenton; a claim for violations of rights secured by the Fourth Amendment of the United States Constitution; a claim for wrongful death pursuant to N.J.S.A. 2A:31-1 to -6; a survival claim pursuant to N.J.S.A. 2A:15-3; and a common law assault and battery claim. (Doc. No. 11 at ¶¶ 53-106). On July 27, 2021, Plaintiff filed a First Amended Complaint which specifically named as defendants the officers involved in the March 14, 2019 incident. (*See generally* Doc. No. 11). Discovery ensued.

The original deadline to complete fact discovery was set for August 5, 2022. (*See* Doc. No. 28). The Court extended the discovery end date numerous times thereafter. On July 13, 2022, the Court extended the fact discovery deadline to October 31, 2022. (ECF No. 32). On October 19, 2022, the Court extended the fact discovery deadline to January 29, 2023. (ECF No. 34). On January 10, 2023, at the request of the parties, the Court again extended the fact discovery deadline to April 3, 2023. (ECF No. 36). Following a conference call with counsel, the Court extended the discovery deadline to July 10, 2023. (ECF No. 41). On July 6, 2023, the Court issued an amended scheduling order which extended the deadline through September 5, 2023. (Doc. No. 46). The Court later extended the fact discovery deadline through December 4, 2023. (ECF No. 51). At the request of counsel, the Court extended that deadline another sixty days through February 2, 2024. (ECF No. 55). On January 30, 2024, the Court issued a second amended scheduling order which extended the fact discovery deadline through April 5, 2024, (Doc. No. 61), which the Court again extended to June 4, 2024, (Doc. No. 63). The Court subsequently extended the deadline to September 3, 2024, (ECF No. 65), and then again to November 4, 2024, (Doc. No. 68).

On September 16, 2024, counsel for Defendants deposed non-party Sweeney. (Doc. No. 77-3 at ¶ 13; Doc. No. 77-4, Exhibit E). During the deposition, counsel for Plaintiff represented Sweeney for purposes of the deposition and asserted multiple objections, including those on the

3

basis of the attorney-client privilege. (*See* Doc. No. 77-4, Exhibit E at 10:21-11:19, 38:17-22). Notably, Plaintiff's counsel and Sweeney had previously conferred in preparation for the deposition. (Doc. No. 77-4, Exhibit E at 10:21-11:1). Counsel for Plaintiff also represented on the record during the deposition that Sweeney was not a plaintiff in this matter and "is not in the caption[,]" but is a fact witness. (*See* Doc. No. 77-4, Exhibit E at 35:8-15, 38:1-9). During her deposition, Sweeney testified that she had four children, the younger two of which were fathered by her ex-boyfriend, Michael McBride. (Doc. No. 77-4, Exhibit E at 14:2-10, 15:2-4). She testified that McBride visits the two children every other weekend and, since 2023, provides the children with Supplemental Security Income ("SSI") through Social Security benefits. (Doc. No. 77-4, Exhibit E at 15:7-11, 20:6-19, 20:22-21:1). Sweeney also testified that she had previously sought court intervention to receive child support from McBride, which resulted in a state court garnishing his wages. (Doc. No. 77-4, Exhibit E at 21:2-9).

During the deposition, Plaintiff's counsel posed multiple questions to Sweeney directed to Decedent's relationship with Sweeney's children. (*See* Doc. No. 77-4, Exhibit E at 68:5-73:9, 75:10-12, 76:17-77:3, 77:23-78:17). During a colloquy on the record, Defendants' counsel inquired as to relevancy of the line of questioning "if [the children] have no claim[.]" (Doc. No. 77-4, Exhibit E at 72:21-23). Counsel for Plaintiff responded: "You're not understanding. I am going to keep going and then you can ask me questions, call me later, whatever. . . . You should be aware of what we call equitable [ad]option. Maybe you should look that up, but let me keep going with my questions." (Doc. No. 77-4, Exhibit E at 72:24-73:6).

More than one month after the deposition, on October 22, 2024, counsel for Plaintiff submitted a status letter to the Court which indicated, for the first time, that Plaintiff would seek leave to amend his complaint to add Sweeney as a plaintiff on behalf of two of her children under

a theory that Decedent equitably adopted them. (Doc. No. 69 at ECF pp. 2-3). The Court conducted a status conference the following day and ordered Plaintiff to "promptly proceed with filing its anticipated Motion for Leave to Amend." (ECF No. 70). The Court also extended the discovery end date through January 10, 2025. (ECF No. 70).

In a January 8, 2025 status letter to the Court, Plaintiff asserted that he still intended to file the anticipated Motion to Amend but provided no explanation for his failure to do so earlier. (Doc. No. 71). As such, Plaintiff sought an extension of the fact discovery deadline to March 10, 2025 and stated "[a]t this time this office is currently in trial and intends to file the motion once that has completed on Thursday, January 9, 2025." (Doc. No. 71). On January 10, 2025, when Plaintiff did not file any motion on January 9, 2025, the Court ordered Plaintiff to file the anticipated motion for leave to amend by no later than January 24, 2025 and extended the fact discovery deadline to March 10, 2025. (ECF No. 72). Yet, Plaintiff again failed to file the motion to amend. As such, on January 27, 2025, the Court ordered the parties to file a joint status letter by February 28, 2025. (ECF No. 73). However, the parties did not do so until March 4, 2025. (Doc. Nos. 74, 75).

In the March 4, 2025 letter to the Court, Plaintiff's counsel explained that he missed the January 24, 2025 deadline because his firm began a seven-week trial on January 21, 2025. (Doc. Nos. 74, 75). Plaintiff claimed that the motion was complete but was not yet finalized for filing. (Doc. Nos. 74, 75). Defendant, in that letter, objected to Plaintiff's request to further extend deadlines in this matter, arguing that Plaintiff had been dilatory. (Doc. Nos. 74, 75). The Court then ordered Plaintiff to file the anticipated motion by March 7, 2025. (ECF No. 76).

Plaintiff ultimately filed the Motion on March 7, 2025. (Doc. No. 77). Through the proposed second amended complaint, Plaintiff seeks to add Sweeney as a plaintiff, on behalf of

her two minor children, to assert a wrongful death claim against Defendants.[2] (Doc. No. 77-5, Exhibit A at ¶¶ 107-117). Though Decedent was not the biological father of Sweeney's children, nor did he adopt them, Plaintiff alleges that New Jersey's "equitable adoption" doctrine applies here. (Doc. No. 77-5, Exhibit A at ¶ 9). Specifically, Plaintiff seeks to introduce new allegations that Sweeney's minor children are entitled to pursue the wrongful death action because Decedent had an oral agreement to adopt the children, which he was not able to fulfill before his death. (Doc. No. 77-5, Exhibit A at ¶¶ 10-18). Plaintiff claims that Decedent was the children's father in all respects and held them out to be his children. (Doc. No. 77-5, Exhibit A at ¶ 14).

Through the Motion, Plaintiff argues that no good cause exists which would justify the denial of leave to amend in light of the liberal approach to the amendment of pleadings. (Doc. No. 77 at ECF p. 2). Plaintiff further asserts that "it has been established from the inception of this case that Ms. Sweeney was a key witness to the claims and the case in chief," and that "the amendment to the pleadings in no way changes the liability in this case and the proofs that Plaintiff is left to demonstrate." (Doc. No. 77-3 at ¶¶ 34, 37). Defendants oppose the Motion, arguing primarily that the amendments are barred by the statute of limitations because they do not relate back to the original complaint, that the amendments are futile because the new allegations do not establish equitable adoption, and that the entire case should be dismissed because Plaintiff is not the administrator of Decedent's estate.[3] (*See generally* Doc. No. 79).

---

[2] Though Plaintiff's proposed amended complaint filed with the Motion adds Sweeney as a plaintiff to both the wrongful death and the survival claim, Plaintiff later clarified in supplemental briefing that he does not intend to seek to add Sweeney as a plaintiff to the survival claim. (Doc. No. 84 at ECF p. 2).

[3] Defendants did not formally cross-move to dismiss the First Amended Complaint. As such, the Court finds the requested relief to dismiss this case to not be properly before the Court at this time.

In reply, Plaintiff argues that his proposed amendments do relate back to the original complaint because they do not change the allegations against Defendants. (*See generally* Doc. No. 82). He also contends that he did not unduly delay seeking the amendment because it was only after Sweeney's deposition on September 16, 2024 that the equitable adoption theory was available because she testified to the facts supporting the theory. (*See generally* Doc. No. 82). Plaintiff adds that, with the testimony of Sweeney, there is sufficient evidence in the record to support the equitable adoption theory and further posits that he is the proper administrator of Decedent's estate. (*See generally* Doc. No. 82).

On August 5, 2025, the Court instructed the parties to submit supplemental briefing regarding the application, if any, of *LaFage v. Jani*, 166 N.J. 412 (2001), to the issues raised in the Motion in light of the parties' arguments as to the statute of limitations.[4] (ECF No. 83). Plaintiff argues that, because Sweeney's children are minors, the minority tolling principle applies to the wrongful death claim brought on their behalf. (Doc. No. 84). Plaintiff also clarifies that its amended complaint seeks to add Sweeney to the wrongful death claim (Count Five), not the survival claim (Count Six). (Doc. No. 84 at ECF p. 2 n.1). In response, Defendants argue that *LaFage* is inapplicable because the parental relationship in that case was undisputed, whereas here Defendants strongly dispute that Decedent equitably adopted Sweeney's children. (Doc. No. 85 at p. 1). Defendants also note that there was little prejudice in *LaFage*, as the complaint was filed twenty-seven days late in that case. (Doc. No. 85 at p. 4). Defendants claim that, here, they are severely prejudiced by the late amendment because Plaintiff has insisted throughout this years-

---

[4] In *LaFage*, the New Jersey Supreme Court held that the Wrongful Death Act may be equitably tolled for minors. 166 N.J. at 440.

7

long litigation that Sweeney was merely a non-party witness until it was advantageous to add her as a plaintiff. (Doc. No. 85 at p. 4).

## II. LEGAL STANDARD

Here, the Court had set a deadline of January 25, 2025 for Plaintiff to file his Motion for Leave to Amend; however, Plaintiff did not meet that deadline. Where, as here, a party seeks to amend its pleading after the deadline set in the Court's scheduling order, the movant must satisfy the good cause standard pursuant to Rule 16 of the Federal Rules of Civil Procedure before the Court considers whether the movant meets the standards for amendment pursuant to Rule 15 of the Federal Rules of Civil Procedure. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) ("[W]hen a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) . . . applies."); *Ohana Enters., LLC v. Mourer Foster, Inc.*, No. 21-10175, 2024 WL 640753, at *2 (D.N.J. Feb. 15, 2024).

To establish good cause, the movant must show due diligence. *Race Tires Am., Inc.*, 614 F.3d at 84. Due diligence can be met if the "delay in filing the motion to amend stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." *Young v. United States*, 152 F. Supp. 3d 337, 353 (D.N.J. 2015) (citation and internal quotation marks omitted). If a party "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary" to seek leave to amend before the deadline lapsed, then courts will find that party lacked the necessary due diligence and will deny leave to amend. *Fermin v. Toyota Material Handling, U.S.A., Inc.*, No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012). Indeed, Rule 16's good cause standard seeks to fix the pleadings at some point in the proceedings. *See United States*

8

*ex rel. McDermott v. Life Source Servs., LLC*, No. 19-cv-15360, 2023 WL 2238550, at *2 (D.N.J. Feb. 27, 2023) (citing, *inter alia*, Fed. R. Civ. P. 16(b), Advisory Committee's Note on 1983 amendment).

Only once the movant demonstrates good cause does the Court evaluate the proposed pleading under Rule 15 of the Federal Rules of Civil Procedure. *Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co.*, No. 09-6259, 2011 WL 6303258, at *3 (D.N.J. Dec. 16, 2011). Pursuant to Rule 15(a)(2), a court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule aims to "ensure[] that an inadvertent error in, or omission from, an original pleading will not preclude a party from securing relief on the merits of his claim." *Korb v. Haystings*, 860 F. App'x 222, 226 n.5 (3d Cir. 2021) (citations omitted).

Nevertheless, the Court may, in its discretion, deny a motion for leave to amend in one of three instances: (1) the movant engaged in undue delay, bad faith, or dilatory motives; (2) the amendment would cause undue prejudice to the non-movant; or (3) the amendment would be futile. *See, e.g.*, *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *BTG Int'l Ltd. v. Actavis Labs. FL, Inc.*, No. 15-5909, 2017 WL 529446, at *2 (D.N.J. Feb. 8, 2017). Notably, "[n]either Rule 15 nor Rule 16 stands for the proposition that a party can amend the complaint each and every time she becomes aware of new factual allegations that already support the allegations as set forth in the complaint." *McDermott*, 2023 WL 2238550, at *4.

As to undue delay, "[d]elay alone is not sufficient to justify denial of leave to amend[,]" but "at some point, delay will become undue, placing an unwarranted burden on the court and an unfair burden on the opposing party." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (internal citation, editing, and quotation marks omitted). "Delay may become undue when a movant has had previous opportunities to amend a complaint." *Cureton v. Nat'l Collegiate*

9

*Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citation omitted). Accordingly, a court will focus on why a movant did not seek to amend sooner and consider "whether new information came to light or was available earlier to the moving party." *Ford Motor Co. v. Edgewood Prop., Inc.*, No. 06-1278, 2011 WL 1321605, at *2 (D.N.J. Apr. 4, 2011) (quoting *in re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004)) (internal quotation marks omitted); *see also XL Specialty Ins. Co. v. PCS Wireless Warehouse, Inc.*, No. 18-17210, 2020 WL 967855, at *3 (D.N.J. Feb. 28, 2020).

In addition, "substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton*, 252 F.3d at 273 (citation omitted). A court will consider the hardship to the non-movant if the amendment were permitted, including "additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the Court. *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

### III.  DISCUSSION

As it must, the Court first considers whether Plaintiff satisfies Rule 16's good cause standard before considering the Motion to Amend under Rule 15.

#### A.  FEDERAL RULE OF CIVIL PROCEDURE 16

Though not addressed by the parties in the briefing, the threshold inquiry here is whether Plaintiff satisfies Rule 16 of the Federal Rules of Civil Procedure. Upon notice that Plaintiff intended to seek leave to amend, the Court ordered Plaintiff to "promptly proceed with filing its anticipated Motion for Leave to Amend" on October 23, 2024. (*See* Doc. Nos. 17, 28; ECF No. 70). After failing to follow that Order, Plaintiff's counsel represented that he would file the motion to amend by January 9, 2025 due to a trial in which his office was involved. (Doc. No. 71). When

10

Plaintiff failed to meet his own deadline, the Court set a deadline of January 24, 2025 for Plaintiff to file the Motion. (ECF No. 72). Yet, Plaintiff failed to comply with that Order as well. Thirty-nine days later, on March 4, 2025, Plaintiff's counsel filed a letter, explaining that he failed to comply with the Order because his firm began a seven-week trial on January 21, 2025 and requesting an extension of the deadline to file to March 7, 2025. (Doc. Nos. 74, 75). The Court granted that extension request, over Defendants' objections, and Plaintiff filed the Motion on March 7, 2025. (*See* ECF No. 76; Doc. No. 77).

Although Plaintiff ultimately complied with the Court's order setting the March 7, 2025 deadline, that compliance does not remedy his prior failures to comply with the Court's previously set deadlines. *See, e.g. L&M Healthcare Commc'ns LLC v. Pantano*, No. 22-481, 2023 WL 9604290, at *5 (D.N.J. Dec. 29, 2023) (finding that movant missed the deadline to file motions to amend, even where the Court granted leave to file such a motion after the deadline had lapsed). As such, Plaintiff must establish good cause through a showing of due diligence for the belated filing of the instant Motion.

Plaintiff, therefore, must show that there was some mistake, excusable neglect, or some other "factor which might understandably account for failure of counsel" to comply with the Court's January 24, 2025 deadline. *Young*, 152 F. Supp. at 353 (citation and internal quotation marks omitted). Here, Plaintiff explained that he missed that deadline because his firm had a seven-week trial beginning on January 21, 2025. However, Plaintiff represented on January 8, 2025 that he would file the Motion by the next day. On January 10, 2025, the Court set the January 24, 2025 deadline. Plaintiff thus had ample time between January 10, 2025 and January 21, 2025 to request an extension of the January 24, 2025 deadline. Yet, Plaintiff does not proffer any basis for failing to do so. Nor does Plaintiff explain why he could not file the Motion on his proposed

11

date of January 9, 2025. Plaintiff's failure to request an extension of the January 24, 2025 deadline before it lapsed does not support a finding of good cause. *See, e.g.*, *Ragguette v. Premier Wine & Spirits*, 691 F.3d 315, 330 (3d Cir. 2012) (holding that an attorney's busy caseload does not generally excuse the failure to meet a Court deadline); *Sohn v. Kominox USA, Inc.*, No. 21-17526, 2023 WL 2770422, at *4 (D.N.J. Apr. 3, 2023) (denying a motion to amend where plaintiff "could have easily sought to extend the Amendment Deadline simultaneously with the multiple requests to extend the fact-discovery deadline"); *Wright v. County of Camden*, No. 21-13158, 2022 WL 3536013, at *5 (D.N.J. Aug. 18, 2022) (denying a motion to amend filed after the deadline to do so in part because the movant failed to request an extension of the deadline).

Furthermore, it appears that Plaintiff's counsel was aware of the anticipated amended claim based on an equitable adoption theory before Sweeney's September 2024 deposition. Indeed, Plaintiff's counsel had prepared Sweeney for the deposition and, during the deposition, posed several questions about Decedent's relationship with her children. (*See* Doc. No. 77-4, Exhibit E at 68:5-73:9, 75:10-12, 76:17-77:3, 77:23-78:17). After Defendants' counsel questioned the relevance of those inquires, Plaintiffs' counsel responded: "You should be aware of what we call equitable [ad]option. Maybe you should look that up, but let me keep going with my questions." (Doc. No. 77-4, Exhibit E at 72:24-73:6). Clearly, Plaintiff's counsel had already formulated the theory for the proposed amendments as early as Sweeney's deposition, which was six months prior to the filing of the instant Motion. Moreover, Plaintiff's counsel has repeatedly represented that, although Sweeney was not a named plaintiff, she was a critical witness known from the inception of this matter and someone with whom it appears Plaintiff and Plaintiff's counsel had access.

Courts routinely decline to find good cause under Rule 16 where the movant "had knowledge of a potential claim at the outset of the litigation [or] was in possession of the

12

information which formed the basis for the potential claim prior to the amendment deadline." *Adams v. Republic Servs., Inc.*, No. 12-267, 2014 WL 12610152, at *2 (D.N.J. Sept. 16, 2014) (citations omitted); *see also Sohn*, 2023 WL 2770422, at *4 (denying leave to amend because the movant knew of the factual basis for his amendments long before requesting leave); *Joy v. Perez*, No. 10-1636, 2011 WL 221700, at *5-6 (D.N.J. Jan. 21, 2011) (same). As Plaintiff himself explained in the Motion, "it has been established from the inception of this case that Ms. Sweeney was a key witness to the claims and the case in chief." (Doc. No. 77-3 at ¶ 33). Plaintiff was aware of Sweeney's relationship to Decedent, as well as the presence of the two minor children in their joint residence, from the outset of this litigation. Notably, Sweeney testified that Plaintiff himself was very well aware of Decedent's relationship to Sweeney's children prior to his death. (*See* Doc. No. 77-4, Exhibit E at 60:21-62:1; 71:10-72:2). As such, Plaintiff had sufficient knowledge well before approaching the close of fact discovery (which had been extensively extended at the parties' requests) of the nature of Decedent's relationship to Sweeney and her children. Because Plaintiff "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary" to seek leave to assert the proposed amendments well before the deadlines lapsed, Plaintiff lacks the necessary due diligence to permit a showing of good cause under Rule 16, warranting a denial of Plaintiff's Motion. *Fermin*, 2012 WL 1393074, at *3.

### B.   FEDERAL RULE OF CIVIL PROCEDURE 15

Even if Rule 16 did not preclude Plaintiff's untimely Motion, the Court further finds that the proposed amendments do not pass muster under Rule 15 notwithstanding its lenient standards.

Here, Plaintiff engaged in undue delay. To preclude an amendment, the delay must be of a nature that it poses an undue burden to the Court and the adverse parties. *Arthur*, 434 F.3d at 204. Here, the delay does pose such an undue burden. Plaintiff initiated this matter in March

2021; yet, four years later, after multiple extensions of fact discovery, Plaintiff seeks to inject new factual allegations—of which he was aware or should have been aware with reasonable diligence in 2021. To permit the proposed amendments would require additional factual discovery, including re-deposing Sweeney and likely Plaintiff and perhaps deposing the children's father, McBride. Contrary to Plaintiff's counsel's arguments otherwise, this is not an instance where Plaintiff recently discovered new information that was not previously available to him. *See Ford Motor*, 2011 WL 1321605, at *3. Sweeney testified that Plaintiff was aware of Decedent's relationship with S and L during the time Sweeney resided with Decedent. (*See* Doc. No. 77-4, Exhibit E at 60:21-62:1; 71:10-72:2). Specifically, Sweeney testified that Plaintiff considered S and L to be his own grandchildren and would visit them twice a week and bring them gifts. (Doc. No. 77-4, Exhibit E at 60:21-62:1; 71:10-72:2). Plaintiff thus did have or should have had the information regarding any equitable adoption theory at the inception of this case over four years ago. Accordingly, the Court finds that Plaintiff unduly delayed seeking the proposed amendments, requiring a denial of his Motion on that basis as well.

The Court also finds that the proposed amendments would unduly prejudice Defendants. As noted above, permitting these amendments over four years after the filing of the original Complaint and on the eve of the close of fact discovery would no doubt "result in additional discovery, cost, and preparation to defend against [the] new facts or theories." *Cureton*, 252 F.3d at 273. Although Plaintiff claims that the proposed amendments "in no way change[] the liability in this case and the proofs that Plaintiff is left to demonstrate," (Doc. No. 77 at ¶ 37), the new amendments would require Plaintiff to prove, and Defendants to investigate, the full extent of facts that could support or negate the theory of equitable adoption including discovery as to the children's dependency on Decedent, if any. Indeed, Defendants have deposed Sweeney.

14

However, Plaintiff limited Defendants' questioning by instructing Sweeney not to answer certain questions because Sweeney "is not the plaintiff" and is "not a[n] authority to this proceeding." (Doc. No. 77-4, Exhibit E at 38:1-9). As such, at a minimum, the parties would need to re-depose Sweeney and would likely need to re-depose Plaintiff, given Sweeney's testimony as to his personal knowledge of Decedent's relationship with the minor children. Furthermore, discovery as to the minor children would be required if the Court were to permit amendment. Under New Jersey's wrongful death statute, any sums recovered must be fairly and equitably apportioned by the Court through consideration of any dependents' ages, physical and mental conditions, financial conditions, and educational or other needs. N.J.S.A. 2A:31-4. Thus, even if Plaintiff were successful in proving that equitable adoption applies here, the parties would have to undergo significant additional discovery as to such topics, which would only cause additional costs and delays, unduly prejudicing Defendants.

Because the Court denies Plaintiff's Motion under Rule 16 as well as under Rule 15 for undue delay and undue prejudice, the Court need not address the parties' arguments as to the statute of limitations, the relation back doctrine, or futility. Nevertheless, the Court notes that the record reflects that Sweeney testified at her deposition that the two minor children have a father that has paid child support through a court order, provides social security benefits to the children, and visits his children on a regular basis. (*See* Doc. No. 77-4, Exhibit E at 15:7-11, 20:6-19, 20:22-21:1). Notably, in order for an adoption to take effect under New Jersey law, the parental rights of a biological parent must be terminated before the child may be adopted by another. N.J.S.A. 9:3-50; *see also in re Adoption of J.E.V.*, 226 N.J. 90, 100 (2016). Here, there is no allegation that McBride's parental rights over S and L have been terminated. Rather, the record reflects the opposite. As such, even if Decedent expressed an intent to adopt S and L, as alleged in the

15

proposed amended complaint, it is questionable at best whether a claim for equitable adoption could apply where the biological father of the children maintains his parental rights.

IV.   **CONCLUSION**

For the reasons discussed above, Plaintiff does not establish the good cause necessary to permit amendment out of time pursuant to Rule 16 of the Federal Rules of Civil Procedure. Plaintiff's proposed amendments also fail to pass muster under Rule 15 of the Federal Rules of Civil Procedure because they were brought with undue delay and would unduly prejudice Defendants.

For the foregoing reasons, and for other good cause shown,

**IT IS, THEREFORE**, on this **27th** day of **October 2025**,

**ORDERED** that Plaintiff's Motion (Doc. No. 77) is hereby **DENIED**; and it is further

**ORDERED** that the parties shall meet and confer as to a proposed schedule for any expert discovery and shall file such proposed schedule by no later than **November 10, 2025**; and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at Docket Entry Number 77.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**